[No. C044191. Third Dist. Sept. 29, 2005.]

THE PEOPLE, Plaintiff and Respondent, v.
DALE REGINALD SMITH, Defendant and Appellant.

1538

**COUNSEL**

Neal P. Pfeiffer and Kathryn Kohlman Druliner for Defendant and Appellant.

Bill Lockyer, Attorney General, Robert R. Anderson, Chief Assistant Attorney General, Mary Jo Graves, Assistant Attorney General, Carlos A. Martinez, Maggy Krell and David A. Eldridge, Deputy Attorneys General, for Plaintiff and Respondent.

## Opinion

**DAVIS, J.**—Confronting a "perfect storm" of prejudicial legal error, we face, yet again, the consequences of the inexplicable reluctance of a prosecutor to request, and a trial court to give, a unanimity instruction when there is a risk that the defendant will be convicted even though there is no agreement among the jurors as to which act constituting the crime defendant committed. Here, the result is not only a reversal of the one count defendant was convicted of committing, but also a likely dismissal of charges should the prosecutor elect to retry the defendant. In arriving at our conclusions, we address when a specific acts unanimity instruction should be given, the standard of review to use in measuring any prejudice caused by the failure to give such an instruction, and the procedure to follow upon retrial if defendant enters a plea of once in jeopardy.

Defendant was charged with 10 counts of lewd and lascivious conduct with V.P., a child under 14 years of age. (Pen. Code, § 288, subd. (a).)[1] Attached to each count was an allegation that defendant engaged in substantial sexual conduct within the meaning of section 1203.066, subdivision (a)(8). The prosecution used identical generic statutory language to describe each of the 10 counts and their associated allegations of substantial sexual conduct.[2]

Electing not to follow the court's instruction that before returning a guilty verdict "the jury must unanimously agree that the prosecution proved beyond a reasonable doubt that the defendant committed *all the acts described by the alleged victim*" (italics added), the jury convicted defendant of count one; was unable to reach a unanimous verdict on whether the associated substantial sexual conduct allegation was true; failed to reach a verdict on count two; and found defendant not guilty of counts three through ten.

Claiming that the jury's mixed verdicts confirmed that the court prejudicially erred in refusing his requests for a specific acts unanimity instruction, defendant unsuccessfully moved for a new trial and was then sentenced to

---

[1] Undesignated section references are to the Penal Code.

[2] Each of the 10 counts charged that "On or about and between January 01, 1996, and October 01, 1999, at and in the County of Sacramento, State of California, defendant(s) Dale Reginald Smith did commit a felony namely: a <u>violation of Section 288(a) of the Penal Code</u> of the State of California, in that said defendant did willfully, unlawfully, and lewdly commit a lewd and lascivious act upon and with the body and certain parts and members thereof of [V.P.], a child under the age of fourteen years, with the intent of arousing, appealing to, and gratifying the lust, passions, and sexual desires of the said defendant(s) and the said child. . . . [¶] . . . [¶] It is further alleged that in the commission of the above offense(s), said defendant, Dale Reginald Smith, engaged in substantial sexual conduct, said victim being a child under the age of fourteen years, within the meaning of Penal Code Section 1203.066(a)(8)."

state prison. He now renews his claim that the court erred prejudicially in failing to give a unanimity instruction. We agree with defendant and therefore will not address his other contention.[3]

FACTS

Between January 1996 and March 1999, V.P. lived with her parents and siblings in a home across the street from defendant's residence. Because V.P.'s parents were involved with drugs, V.P. and her brother M. typically spent four to five days a week at defendant's home watching television and playing computer games.

According to V.P., in March 1999, when she was 11 years old and in the sixth grade, she and her siblings were removed from their parents' home by CPS (child protective services) and she was placed with her grandmother. V.P. lived with her grandmother for six to eight months and then with her grandfather for about two months. In October 1999, V.P. was placed in foster care with Mr. and Mrs. T. On December 21, 2000, V.P. told Mrs. T. that V.P. had been sexually molested by defendant and the matter was reported to the police. All of the alleged molestations occurred before V.P. was removed from her parent's residence in March 1999 and she went to live with her grandmother.

At trial, V.P., who was by then 15 years old, testified that when she was 10 and 11 years old she went to defendant's residence about five days a week. It was during some of these visits that defendant molested her. She described three different types of sexual molestation that defendant engaged in; each occurring at a different location in his residence.

On 5 to 10 occasions, defendant took her into the bathroom and molested her. These molestations were always the same—defendant would lift her shirt and bra and place his mouth on her chest.

On more than 10 occasions, defendant molested V.P. in the living room. Again, the molestations were all the same—defendant would have V.P. sit on his lap, he would undo her pants and rub his hand on her vagina.

On more than 10 occasions, defendant molested V.P. in each of the two bedrooms in his residence. These molestations occurred after defendant first molested V.P. in the living room as previously described. He would then take her into one of the two bedrooms where he would have her remove her

---

[3] Defendant also contends that the trial court erred in restricting his impeachment of the victim.

clothes and lie on the bed. Defendant would get on his knees and lick her vagina while he kept one hand on his penis. About half of the time defendant would put his hand on her breasts while licking her vagina. Other than the occasional variation involving putting his hand on V.P.'s breasts while licking her vagina, these molestations were also always the same.[4]

In addition to V.P.'s trial testimony, the jury heard evidence of a pretrial statement she gave at the Multi-Disciplinary Interview Center (MDIC). During that interview, V.P. described two separate discrete times when defendant had molested her: V.P. told the interviewer that while she could not remember when defendant started molesting her, she clearly recalled the last time that he did so, which was about two years before the present MDIC interview, when she was 11 and one-half years old. She was in defendant's living room and he had her sit on his lap. He rubbed her vagina and then took her into one of two bedrooms where, at his direction, she removed her pants and lay on the bed on her back. Defendant got onto his knees on the floor and licked her vagina. While licking her vagina, defendant had his hand in his pants.

V.P. also clearly remembered that on one occasion when she was 11 years old, defendant took her into the bathroom, lifted her shirt and sucked on her breast, leaving a red mark. Defendant told her not to show it to anyone.

On February 7, 2001, during a tape-recorded pretext call, V.P. confronted defendant with his having licked her vagina. He apologized for doing so. He also assured her he would not do it again.

V.P.'s brother, M., who was three years older than V.P., testified that he was at defendant's residence with V.P. several times during the week and never observed defendant touch V.P. in a sexual manner. Defendant, who was 56 years old at the time of trial, denied ever touching V.P. sexually. He denied that he intended his statements during the pretext call to be an apology for molesting V.P., nor did he intend that his assurance to her that he would not do it again would be understood by her as an admission that he molested her.

DISCUSSION

I. *Failure to Give a Specific Acts Unanimity Instruction*

During discussions on jury instructions, defendant, citing *People v. Jones* (1990) 51 Cal.3d 294 [270 Cal.Rptr. 611, 792 P.2d 643] (*Jones*), requested

---

[4] Both at trial and during a pretrial interview, V.P. told of one instance when she was eight years old and defendant molested her in her own home. Both at trial and during her interview, V.P. expressed doubt that this molestation actually occurred. During argument, the prosecutor expressly told the jury that it was not to consider evidence of this molestation in determining defendant's guilt on any count.

that the court give a specific acts unanimity instruction. The court, with full concurrence from the prosecutor, declined the request, stating that the court believed the modified version of CALJIC No. 4.71.5, which the court had prepared, complied with *Jones*.[5] Accordingly, the court instructed the jury as follows:

"In this case the prosecution has presented testimony that the defendant committed more than 10 essentially indistinguishable acts of fondling of the alleged victim's vagina and breasts and oral copulation of the alleged victim's vagina and one act of oral copulation of her breasts.[6]

"In order to find the defendant guilty, the jury must unanimously agree that the prosecution proved beyond a reasonable doubt that the defendant *committed all the acts described by the alleged victim* within the period alleged.

"In other words, the jury must unanimously agree the alleged victim described with sufficient certainty acts which satisfy the elements of Penal Code section 288[, subdivision] (a), that the number of acts was sufficient to support each of the counts alleged and that the acts were within the general period alleged." (Italics added.)

---

[5] CALJIC No. 4.71.5 provides: "Defendant is accused [in Count[s] [_____] of having committed the crime of _____, a violation of section _____ of the Penal Code, on or about a period of time between _____ and _____. [¶] In order to find the defendant guilty, it is necessary for the prosecution to prove beyond a reasonable doubt the commission of [a specific act [or acts] constituting that crime] [all of the acts described by the alleged victim] within the period alleged. [¶] And, in order to find the defendant guilty, you must unanimously agree upon the commission of [the same specific act [or acts] constituting the crime] [all of the acts described by the alleged victim] within the period alleged. [¶] It is not necessary that the particular act or acts committed so agreed upon be stated in the verdict."

[6] Here the court misspoke when it described the molestation as including "oral copulation of her breasts." The written instruction given to the jury reads, "oral contact with her breast." This mistake, in turn, apparently led the jury to request and receive a clarifying definition of "oral copulation" as "copulating the mouth of one person with the sexual organ of another person." The jury's request was understandable both because of the conflicting versions of the instruction they received, and also because the court gave a misleading definition of "substantial sexual conduct" as that term is defined in section 1203.066, subdivision (b). That section limits the meaning of "substantial sexual conduct" to "penetration of the vagina or rectum of either the victim or the offender by the penis of the other or by any foreign object, oral copulation, or masturbation of either the victim or the offender." Inexplicably, the court conveyed a broader meaning of the term by defining it for the jury as follows: " 'Substantial sexual conduct' *includes* oral copulation, or masturbation of the victim." (Italics added.) The jury was thus free to conjure up its own universe of examples without further guidance and restriction. This error was not prejudicial to defendant since the jury was unable to reach a decision regarding the truth of the substantial sexual conduct allegation charged with count one.

■ Contrary to the trial court's and prosecutor's understanding, the foregoing instruction does not comply with *Jones*. In *Jones*, after acknowledging that the need for a unanimity instruction had a constitutional basis and that CALJIC No. 4.71.5 codified that principle, the Supreme Court stated: "In a case in which the evidence indicates the jurors might disagree as to the particular act defendant committed, the standard unanimity instruction should be given. [Citation.] But when there is no reasonable likelihood of juror disagreement as to particular acts, and the only question is whether or not the defendant in fact committed all of them, the jury should be given a modified unanimity instruction which, *in addition* to allowing a conviction if the jurors unanimously agree on specific acts, also allows a conviction if the jury unanimously agrees the defendant committed *all* the acts described by the victim." (*Jones, supra,* 53 Cal.3d at pp. 321–322, italics added.)

Here, V.P. described at trial three distinctly different types of molestation that occurred in different locations of the residence and not necessarily on the same days. When defendant took V.P. into the bathroom 5 to 10 times, he always lifted her shirt and bra and put his mouth on her chest. When he molested her in the living room more than 10 times, defendant always sat her on his lap and rubbed his hand on her vagina. When defendant took V.P. into one or the other of the two bedrooms on more than 20 occasions, he always had her lie on the bed while he knelt and licked her vagina.

In addition, through V.P.'s pretrial statements, the prosecution singled out two separate occasions when V.P. was molested: The last time defendant molested her was when V.P. was 11 and one-half years old and defendant rubbed her vagina in the living room and then licked her vagina in one of the bedrooms. The other specifically described occasion occurred when V.P. was 11 years old and defendant took V.P. into the bathroom, sucked her breast in a manner that left a red mark, and then told her not to show the mark to anyone.

■ As the jury's mixed verdicts confirm, the evidence sufficiently differentiated between different types, locations, and episodes of molestation as to which a jury might (and here did) disagree as to the particular acts constituting the crime defendant is convicted of committing. Consequently, the trial court erred when it failed, in conformity with *Jones*, to give a specific acts unanimity instruction in addition to an instruction allowing a conviction if the jurors unanimously agreed "the defendant committed all the acts described by the victim." (*Jones, supra,* 53 Cal.3d at pp. 321–322.)

## II. *Prejudicial Nature of the Instructional Error*

■ There is a split of authority regarding the legal standard to be used to determine the effect of an erroneous failure to give a specific acts unanimity instruction. Since 1983, this court has held that the error must be shown to be harmless beyond a reasonable doubt. (*People v. Deletto* (1983) 147 Cal.App.3d 458, 472 [195 Cal.Rptr. 233] (*Deletto*); *People v. Gordon* (1985) 165 Cal.App.3d 839, 854–855 [212 Cal.Rptr. 174], disapproved on other grounds in *People v. Frazer* (1999) 21 Cal.4th 737, 765, fn. 28 [88 Cal.Rptr.2d 312, 982 P.2d 180] & *People v. Lopez* (1998) 19 Cal.4th 282, 292 [79 Cal.Rptr.2d 195, 965 P.2d 713]; *People v. Thompson* (1995) 36 Cal.App.4th 843, 853 [42 Cal.Rptr.2d 798].)[7] We continue to so hold.

■ Federal due process requires that before one can be convicted of a crime the prosecution must convince a jury that the evidence establishes the defendant's guilt of the crime beyond a reasonable doubt. (*In re Winship* (1970) 397 U.S. 358 [25 L.Ed.2d 368, 90 S.Ct. 1068].) If a jury (as here) is permitted to amalgamate evidence of multiple offenses, no one of which has been proved beyond a reasonable doubt to all of the jurors required to agree on the verdict, the prosecution's burden is lessened and defendant is denied due process.[8] Such significant lessening of the prosecution's burden of proof compels reversal unless we are able to declare a belief that it was harmless beyond a reasonable doubt. (*Chapman v. California* (1967) 386 U.S. 18, 24 [17 L.Ed.2d 705, 87 S.Ct. 824]; *People v. Serrato* (1973) 9 Cal.3d 753, 767 [109 Cal.Rptr. 65, 512 P.2d 289], overruled on another ground in *People v. Fosselman* (1983) 33 Cal.3d 572, 583, fn. 1 [189 Cal.Rptr. 855, 659 P.2d 1144]); *Deletto, supra,* 147 Cal.App.3d at p. 472.)

Of the opinions that apply the less demanding standard set forth in *People v. Watson* (1956) 46 Cal.2d 818, 836–837 [299 P.2d 243] (*Watson*) (holding that reversal is required only when the record shows a reasonable probability that the defendant would obtain a more favorable outcome in the absence of the error), only *People v. Vargas* (2001) 91 Cal.App.4th 506,

---

[7] Other cases holding that reversal is required unless it is harmless beyond a reasonable doubt include *People v. Wolfe* (2003) 114 Cal.App.4th 177, 185–188 [7 Cal.Rptr.3d 483]; *People v. Melhado* (1998) 60 Cal.App.4th 1529, 1536 [70 Cal.Rptr.2d 878]; *People v. Gary* (1987) 189 Cal.App.3d 1212, 1218 [235 Cal.Rptr. 30]; *People v. Ramirez* (1987) 189 Cal.App.3d 603, 615, footnote 13 [236 Cal.Rptr. 404], disapproved on other grounds in *People v. Russo* (2001) 25 Cal.4th 1124, 1136–1137 [108 Cal.Rptr.2d 436, 25 P.3d 641]; and *People v. Metheney* (1984) 154 Cal.App.3d 555, 563–564 and footnote 5 [201 Cal.Rptr. 281].

[8] In this state it is a state constitutional requirement that when a felony is charged, the jury consists of 12 jurors and the verdict must be unanimous. (Cal. Const., art. I, § 16; *People v. Mickle* (1991) 54 Cal.3d 140, 178 [284 Cal.Rptr. 511, 814 P.2d 290].)

561–562 [110 Cal.Rptr.2d 210] posits a rationale.[9] *Vargas* relies on *Johnson v. Louisiana* (1972) 406 U.S. 356, 359 [32 L.Ed.2d 152, 92 S.Ct. 1620], to conclude that *Watson* provides the correct standard for such review because the requirement for jury unanimity in a criminal prosecution is a state constitutional requirement rather than a federal constitutional requirement. (*Vargas, supra,* 91 Cal.App.4th at p. 562.) The analytical error in *Vargas* is rooted in the court's failure to distinguish between the need for *all jurors voting for guilt* to do so for the same state-defined criminal act, and the issue presented in *Johnson* of whether federal due process required *all members of a jury* to vote for the verdict. It is the latter sense of the term "unanimity" that was at issue in *Johnson*, where the court found no federal constitutional error in Louisiana's requirement of needing only 9 of 12 jurors to agree on a guilty verdict. That is not the context presented here.

Our resolution of this split of authority is significant since we find that the jury's decision to return three different verdicts on the 10 charged counts makes it improbable that the jury relied on different specific acts in finding defendant guilty of count one. The jury convicted defendant of a single count (count one); failed to reach a unanimous verdict on whether the associated substantial sexual conduct allegation was true; failed to reach a verdict on count two; and found defendant not guilty on counts three through ten. By differentiating between the counts in their verdicts and failing to reach agreement on the substantial sexual conduct allegation charged in count one, the jury acted in a manner that suggests that it focused on the same specific act of molestation when it reached its decision on count one.

However, we cannot declare beyond a reasonable doubt that this jury did so. This was a jury that felt free to not only ignore the court's instruction that to return a guilty verdict they had to unanimously agree that the prosecution proved beyond a reasonable doubt that the defendant committed all the acts described by the alleged victim; this was a jury that also disregarded the prosecutor's argument to that effect. Although improbable, it is certainly reasonably possible that this jury concluded that as long as each juror believed beyond a reasonable doubt that defendant had molested V.P. at least once, it did not matter that they differed on what act of molestation actually occurred.

---

[9] Other cases applying the *Watson* standard include *People v. Turner* (1983) 145 Cal.App.3d 658, 681–682 [193 Cal.Rptr. 614], disapproved on other grounds in *People v. Newman* (1999) 21 Cal.4th 413, 415, 422, footnote 6 [87 Cal.Rptr.2d 474, 981 P.2d 98], and *People v. Majors* (1998) 18 Cal.4th 385, 411 [75 Cal.Rptr.2d 684, 956 P.2d 1137]; *People v. Patrick* (1981) 126 Cal.App.3d 952, 967 [179 Cal.Rptr. 276]; and *People v. McIntyre* (1981) 115 Cal.App.3d 899, 911 [176 Cal.Rptr. 3].

The jury was presented with three distinctly different types of molestation that occurred in different locations of the residence and not necessarily on the same days. In addition, two acts of molestation were separately singled out in V.P.'s pretrial statements. Some jurors may have concluded that when V.P.'s more generalized testimony concerning bathroom molestations was combined with her more detailed recollection of the time defendant left a red mark on her breast, the evidence was sufficient to meet the exacting standard of proof beyond a reasonable doubt. Other jurors may not have been sufficiently convinced of the truth of the bathroom allegations, but were persuaded by V.P.'s recollection of the very last time she was molested. V.P. testified that on that date (a date closest to the time of trial) defendant not only rubbed her vagina in the living room, but then took her to a bedroom and licked her vagina. The not guilty verdicts on counts three through ten can be rationally attributed to the jury concluding that V.P.'s generalized recollection of molestations (uncoupled from the two specific molestations recounted in her pretrial statements) was insufficient to meet the standard of proof beyond a reasonable doubt. We will therefore reverse defendant's conviction.

## III. *Directions On Retrial*

As noted earlier, all 10 counts were charged using identical language. Accordingly, defendant contends that because Evidence Code section 1150 prohibits evidence of the mental process jurors used in reaching their verdicts, it is impossible to determine which facts were found and rejected by the jury in finding defendant not guilty of counts three through ten.[10] From this he urges us to conclude that he cannot be retried on the identically charged counts one and two. The Attorney General responds that if the conviction is reversed, the matter must be remanded to the trial court where the defendant can plead once in jeopardy should new charges be filed. It is there, the Attorney General maintains, that the burden of proof to show common facts underlying counts three through ten and new charges falls on the defendant's shoulders. The Attorney General is only partially correct.

Our state constitutional and statutory prohibition against double jeopardy, like that of the federal Constitution, provides that a person may not be subjected to a second prosecution for the same offense for which he or she has once been prosecuted and convicted or acquitted. (U.S. Const., 5th

---

[10] Evidence Code section 1150, subdivision (a), provides in pertinent part: "No evidence is admissible . . . concerning the mental processes by which [the verdict] was determined." See *People v. Steele* (2002) 27 Cal.4th 1230, 1260–1265 [120 Cal.Rptr.2d 432, 47 P.3d 225].

Amend.; Cal. Const., art. I, § 15; Pen. Code, §§ 654, subd. (a), 656, 687, 793, 794, 1016, 1017, 1022, 1023, 1041, 1101, 1118.2, 1188, 1387; *Benton v. Maryland* (1969) 395 U.S. 784 [23 L.Ed.2d 707, 89 S.Ct. 2056] [holding that the double jeopardy prohibition of the Fifth Amendment applies to the states].)

■ If and when defendant is retried, the defense is raised by a special plea of once in jeopardy. (§§ 1016, factor 6, 1017, factor 4; *In re Harron* (1923) 191 Cal. 457, 467 [217 P. 728]; *People v. Memro* (1995) 11 Cal.4th 786, 821 [47 Cal.Rptr.2d 219, 905 P.2d 1305].) In usual circumstances, the burden is on the defendant to prove that he or she has been placed in double jeopardy by reason of a prior conviction or acquittal. This common context was presented in the seminal case of *People v. Burkhart* (1936) 5 Cal.2d 641 [55 P.2d 846]. There the defendant was charged with driving under the influence of alcohol, and pleaded once in jeopardy based on a claim that he had earlier pleaded guilty to a county ordinance covering the same incident. (*Id.* at p. 642.) The court held that the burden to prove the defense was on the defendant. Defendant failed to do so because he did not provide the court with a copy of the county ordinance. (*Id.* at pp. 643–644.) Had the defendant succeeded in persuading the trial court, he then would have borne a similar burden in convincing the jury. (*People v. Mason* (1962) 200 Cal.App.2d 282, 285 [19 Cal.Rptr. 240]; Evid. Code, §§ 115, 500, 550.) Here we are faced with unusual circumstances that will likely lead to a shift of the burden of proof on retrial.

The context before us is unlike that in *Burkhart,* where the defendant pleading once in jeopardy faced no procedural disadvantage attributable to a prosecutorial misstep. Here the likely inability of defendant to prove the defense is attributable to a deliberate decision by the prosecution to charge, argue, and support instructions to the jury that were inconsistent with the specificity of the evidence presented.

The prosecution charged this case using nondifferentiated identical statutory language for each count. It tried and argued the case on the theory that the acts of molestation testified to by the victim were indistinguishable, and then presented testimony of three distinctly different types of molestation that occurred in different locations of the residence and not necessarily on the same days, as well as two instances of specifically described acts through V.P.'s pretrial statements. It then fully concurred with the trial court in the giving of the erroneous modification of CALJIC No. 4.71.5; all the while presenting to the court an incorrect description of the holding in *Jones, supra,* 51 Cal.3d 294.

In this unusual context we will follow the procedure adopted in nine federal circuits and by several states when, as here, unique circumstances associated with the prosecution's charging decisions and the charges themselves necessitate shifting the burden to the prosecution once defendant makes a nonfrivolous showing that an indictment or information charges him with an offense for which he was formerly placed in jeopardy. The shift occurs in the federal setting when a defendant is being retried on a conspiracy charge for which defendant maintains he has been convicted or acquitted.[11]

■ If, on retrial, defendant enters a plea of once in jeopardy, he will be allocated the initial burden of going forward. He must make a nonfrivolous showing that an indictment or information charges him with an offense for which he was formerly placed in jeopardy. The burden will then shift to the prosecution to establish by a preponderance of evidence that the new charges involve different offenses than those the defendant was acquitted of committing.

Citing *People v. Jordan* (1971) 19 Cal.App.3d 362 [97 Cal.Rptr. 570] (*Jordan*), the People urge that it was defendant's duty, when "faced with a charging document which created the risk of a future undetectable double jeopardy violation," to demur to the document thereby avoiding the instant problem. *Jordan* is distinguishable.

---

[11] *United States v. Mallah* (2d Cir. 1974) 503 F.2d 971, 986 [referring to specified facts, the court held that, "these facts are sufficient to satisfy appellant's burden of going forward, of putting his double jeopardy rights at issue"]; *United States v. Inmon* (3d Cir. 1977) 568 F.2d 326, 331–332 ["We conclude, as did the Second Circuit in *Mallah*, that, when a defendant makes a non-frivolous showing that an indictment charges the same offense as that for which he was formerly placed in jeopardy, the burden of establishing separate crimes—in this case separate conspiracies—is on the government"]; *United States v. Loyd* (11th Cir. 1984) 743 F.2d 1555, 1562–1563 ["The defendant must come forward with a prima facie nonfrivolous claim of double jeopardy" to shift the burden to the government to prove separate crimes]; *United States v. Booth* (1st Cir. 1982) 673 F.2d 27, 30 ["A defendant claiming double jeopardy has the burden of presenting evidence to establish a prima facie nonfrivolous double jeopardy claim"]; *United States v. Bendis* (9th Cir. 1981) 681 F.2d 561, 564 ["once the defendant makes a nonfrivolous showing of former jeopardy, the government must tender to the court evidence indicating that separate conspiracies are charged"]; *United States v. Jabara* (6th Cir. 1981) 644 F.2d 574, 576 [finding it appropriate for a trial court, confronted with a non-frivolous double jeopardy claim, to shift to the government the burden of proving by a preponderance of the evidence that it is not seeking to prosecute the same offense a second time]; *United States v. Stricklin* (5th Cir. 1979) 591 F.2d 1112, 1117–1118 ["It is similarly reasonable to require the defendant to tender a prima facie nonfrivolous double jeopardy claim before the possibility of a shift of the burden of persuasion to the government comes into play"]; *United States v. Tercero* (8th Cir. 1978) 580 F.2d 312, 315, fn. 12 [" 'once a defendant introduces sufficient evidence that the two conspiracies alleged were in fact one, the burden shifts to the government to rebut the inference of unity' "]; *People v. Mezy* (1996) 453 Mich. 269, 277–278 [551 N.W.2d 389]; *State v. Sears* (1996) 196 W.Va. 71, 75 [468 S.E.2d 324]; *State v. Thornton* (1991) 306 Ark. 402, 406–407 [815 S.W.2d 386].

In *Jordan*, defendant and his wife, Fania, were indicted on various offenses arising out of their scuffling with two police officers. Five counts of the indictment contained identical charging language. (*Jordan, supra,* 19 Cal.App.3d at pp. 366–367.) For example, counts 9 and 10 charged: "Samuel Jordan assaulted a peace officer in violation of Penal Code Section 241." (*Jordan, supra,* 19 Cal.App.3d at p. 367.)

As to this pleading, the court observed: "Illustrative of the constitutional problem involved would be the situation should Samuel be convicted by general verdict of a jury of assault on a police officer (count 9) but acquitted by general verdict of a jury of assault on a police officer (count 10). If on appeal his conviction were reversed, what evidence would be admissible on count 9 on retrial? Of what act had he been acquitted?" (*Jordan, supra,* 19 Cal.App.3d at p. 370.) It was in this context that the court placed the duty of avoiding such a circumstance on the defendant by means of demurrer. (*Id.* at p. 371.)

The offenses at issue in *Jordan* arose from specific and factually distinguishable acts committed on a single occasion. Since the prosecution knew which acts they were relying upon to support each count, the indictment was demurrable to cure the lack of specificity. In the present case, the offenses were pleaded on the theory that they would be proven by generic testimony, i.e., conduct occurring over several years where the facts of one offense are indistinguishable from those of the other offenses. Since generic testimony violates neither a defendant's constitutional due process right to notice nor to present a defense (*Jones, supra,* 51 Cal.3d at pp. 317–321), we do not see, and the Attorney General has not shown, how demurring to the instant pleading could have assisted the defendant in avoiding the present double jeopardy problem.

Moreover, based upon the generic nature of the pleadings, defendant had no reason to anticipate a potential future double jeopardy problem—he would either be convicted of all of the offenses or none of them, and therefore no double jeopardy issue could arise. What defendant could not reasonably anticipate was that the prosecution would present evidence of distinguishable acts, and that the trial court, backed by the prosecution, would not give the correct modification of CALJIC No. 4.71.5 as set forth in *Jones*. Consequently, defendant cannot be faulted for failure to demur to the information.

## Disposition

The judgment is reversed.

Scotland, P. J., and Morrison, J., concurred.