* Pursuant to California Rules of Court, rule 8.1110, this opinion is certified for publication with the exception of parts I and III of the Discussion.

[EDITORS' NOTE: THIS OPINION IS DEPUBLISHED UPON GRANTING OF PETITION FOR REVIEW. THE OPINION APPEARS BELOW WITH A GRAY BACKGROUND.]
OPINION
Defendant Ricky Verrell Baughman was convicted after a jury trial of incest, oral copulation of a person under the age of 16, and 10 counts of lewd and lascivious acts upon a child more than 10 years younger than defendant. Sentenced to nine years eight months in state prison, defendant appeals. He contends there was insufficient evidence to support three of the *Page 24 counts for committing lewd and lascivious acts and that the trial court erred in failing to instruct the jury with a specific acts unanimity instruction as to the incest count. He also contends his upper term sentence violatesBlakely v. Washington (2004) 542 U.S. 296
[159 L.Ed.2d 403, 124 S.Ct. 2531]. We reject his contentions and affirm the judgment.
 FACTUAL AND PROCEDURAL BACKGROUND The victim, F., was born in November 1989. She and her two brothers lived in a trailer with their father. F. testified that "a little while after Christmas" — approximately "three or four months" after her 14th birthday — defendant placed his hand on her breast, under her shirt and bra, while she was lying in bed. He left his hand there for a "long time."
 Later that same day, while the family was at defendant's mother's house, defendant apologized to F. and said it would "never happen again." Within five minutes, however, defendant closed the bathroom door, had F. remove her panties, and licked F.'s vagina as she sat on the toilet. After a minute or two, defendant removed his pants and had sexual intercourse with F. Afterward, he again told her he was sorry and it would never happen again.
 Defendant, however, continued to have sex with F. just about every week. Nearly every time, defendant would apologize and promise it would never happen again. The incidents occurred when F.'s brothers were gone or asleep. Sometimes defendant gave her brothers money to go to the store and would then have sex with F. while they were gone. Defendant would tell the brothers to slow down if they returned too quickly. On one occasion, F.'s brothers awoke while defendant was having sex with F. and saw defendant "going up and down." When F.'s brothers told defendant they thought he and F. were having sex, defendant got upset, raised his voice, and said he and F. had just been playing around.
 On November 11, 2004, a couple of weeks after the final incident, F. told an adult friend that defendant was having sex with her and she could no longer stay with him. F. was interviewed by police. Although being scared and nervous, she failed to mention that defendant had also had sex with her on that first occasion when he licked her vagina. *Page 25 Defendant was interviewed by police on November 17, 2004. In that interview, he denied any sexual contact with F. However, on November 19, 2004, during a consultation with Billy Lee Wilson, Jr., a marriage and family therapist intern at Shasta Treatment Associates, defendant admitted he had a sexual relationship with F. Defendant told Wilson that he had sexual intercourse with F. between four to six times, "[o]ne to two years before" the date of the consultation. Also, on December 1, 2004, in another interview with police, defendant admitted he had sexual intercourse with F. several times.
 At trial, defendant testified he did not remember having sex with F., although he did not deny it. Defendant did not remember speaking with Wilson and said he admitted having sex with F. to the police because the police made him fear F. would commit suicide or turn to drugs or prostitution if he said she was lying. Defendant said he had problems with his memory due to a head injury he sustained a few years earlier.
 DISCUSSION I Substantial Evidence* Defendant contends there was no substantial evidence to support his convictions for lewd and lascivious conduct which occurred in December 2003 (count 3), January 2004 (count 4), and February 2004 (count 5). We disagree.
 When a defendant challenges the sufficiency of the evidence, the reviewing court "must determine, in light of the whole record whether any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. [Citation.]" (People v. Davis (1995)10 Cal.4th 463, 510, italics omitted.) To be sufficient, evidence presented at trial need only "`"`reasonably justify the trier of fact's findings'"'" when viewed in the light most favorable to the judgment and presuming in support of the judgment every fact reasonably deducible from the evidence. (People v.Stanley (1995) 10 Cal.4th 764, 792-793; see People v.Ochoa (1993) 6 Cal.4th 1199, 1206.) In other words, "[i]f the verdict is supported by substantial evidence, we are bound to give due deference to the trier of fact and not retry the case ourselves. [Citations.] . . . It is the exclusive function of the trier of fact to assess the credibility of witnesses and draw reasonable inferences from the evidence. [Citations.]" (People v. Sanchez (2003) 113 Cal.App.4th 325, 330.)
 Defendant's argument that the evidence was insufficient is based the following testimony of F.:
 "Q: [A]nd do you know what it is that you're testifying about?
 "A: Yes.
 "Q: And what's that?
 "A: Because me and my dad, uhmmm, we had sex.
 "Q: Okay. How long ago was it that that first happened?
 "A: It was a little while after Christmas, I think.
 "Q: Do you remember what year it was?
 "A: It was of `04.
 "Q: Okay. So it was — how old were you?
 "A: I was 14.
 "Q: How long had you been 14?
 "A: Like three or four months.
 "Q: Okay. So, then it was — and your birthday is in November; is that correct?
 "A: Yeah.
 "Q: So, it was a couple of months after that when you first remember this happening?
 "A: Yes."
 Relying heavily on F.'s estimate that it was "[l]ike three or four months" (italics added) after her birthday, defendant argues that this testimony fails to support a finding by the jury that the first incident happened any earlier than March 2004 — four months after F.'s birthday.
 To the contrary, we conclude F.'s testimony was sufficient to place the first incident at least as early as January 2004. January 2004 was "a little while after Christmas" in "`04" and only a couple of months (two and one-half) after F.'s birthday. And while F.'s testimony arguably may not have been sufficient to place the first incident any earlier than that, the jury had more than F.'s testimony from which to find that the first incident took place in December 2003.
 Billy Lee Wilson, Jr., the marriage and family therapist intern at Shasta Treatment Associates, testified that defendant admitted he had a sexual relationship with F. between four to six times, "[o]ne to two years before" the November 19, 2004, consultation. When asked for further clarification, Wilson explained that defendant said that sexual intercourse occurred over the previous year to two years. Thus, there was sufficient evidence of lewd and lascivious conduct in December 2003, January 2004, and February 2004, to support the jury's verdict.
 II Unanimity Instruction Defendant also contends the trial court failed to give the required specific acts unanimity instruction for the one count of incest. He contends this omission resulted in a violation of his state and federal constitutional due process rights and his state constitutional right to a unanimous verdict. There was no error.
 The requirement of jury unanimity "`is intended to eliminate the danger that the defendant will be convicted even though there is no single offense which all the jurors agree the defendant committed.' [Citation.] . . . `The [unanimity] instruction is designed in part to prevent the jury from *Page 26 amalgamating evidence of multiple offenses, no one of which has been proved beyond a reasonable doubt, in order to conclude beyond a reasonable doubt that a defendant must have done something sufficient to convict on one count'" (Peoplev. Russo (2001) 25 Cal.4th 1124, 1132
[108 Cal.Rptr.2d 436, 25 P.3d 641], italics omitted.)
 With respect to the charge of incest, defendant was charged with one count alleged to have occurred between December 1, 2003, and September 30, 2004. The evidence presented and argued by the prosecution consisted of at least two specific instances, as well as testimony it occurred weekly for approximately nine months. The prosecution did not select any specific act to prove the charge. Therefore, a unanimity instruction was required.
 The court instructed the jury with CALJIC No. 4.71.5 which has two variations. In the first, the jury is told that, "in order to find the defendant guilty, you must unanimously agree upon the commission of [the same specific act [or acts] constituting the crime] . . . within the period alleged" (Ibid.; the "specific acts version").
 In the second, which was given by the court here and did not distinguish among the charges, the jury was told it "must unanimously agree upon the commission of . . . [all of the acts described by the alleged victim] within the period alleged." According to the use note, the first version should be given where "the jurors might disagree as to the particular act defendant committed." The second should be used "[w]hen there is no reasonable likelihood of juror disagreement as to particular acts, and the only question is whether or not the defendant committed all of them."
 Defendant contends this instruction as given by the court was inadequate to inform the jury of the requirement that it unanimously agree on the acts constituting the crimes alleged. Defendant argues that the court should have instructed the jury in accordance with either the "specific acts version" of CALJIC No. 4.71.5 or CALJIC No. 17.01, which reads: "The defendant is accused of having committed the crime of _____ [in Count ___]. The prosecution has introduced evidence for the purpose of showing that there is more than one [act] [or] [omission] upon which a conviction [on Count ___] may be based. Defendant may be found guilty if the proof shows beyond a reasonable doubt that [he] [she] committed any one or more of the [acts] [or] *Page 27 [omissions]. However, in order to return a verdict of guilty [to Count ___], all jurors must agree that [he] [she] committed the same [act] [or] [omission] [or] [acts] [or] [omissions]. It is not necessary that the particular [act] [or] [omission] agreed upon be stated in your verdict."
 While the "specific acts version" of CALJIC No. 4.71.5 may have been more appropriate as to the incest count, the jury was faced with either believing F. or defendant. The instruction given by the trial court adequately informed the jury of the requirement of unanimity. Indeed, it went even further. Even if it were possible the jurors might have disagreed about how many or which incidents occurred, the instruction given by the court indicated the jury must unanimously agree that defendant committed all of the acts described by F.[1] This is a much heavier burden than requiring unanimous agreement on any particular act. (3) The jury is presumed to have complied with the instructions given to it. (People v. McLain
(1988) 46 Cal.3d 97, 119-120 [249 Cal.Rptr. 630,757 P.2d 569].)
 Nevertheless, defendant contends that reversal is required under People v. Smith (2005)132 Cal.App.4th 1537 [34 Cal.Rptr.3d 472] — a case in which this court reversed the defendant's sex offense conviction based on the trial court's failure to give a unanimity instruction and the risk that the defendant was convicted even though there was no agreement among the jurors as to which act constituting the crime the defendant committed. (Id. at p. 1540.)Smith is inapposite because the instruction here told the jury it must unanimously agree that defendant committedall the acts described by F., and unlikeSmith, there is nothing in the record to suggest the jury did not follow this plain instruction. (Ibid.) We find no error.
 III Defendant Has Forfeited His Blakely Challenge* At the sentencing hearing held on June 10, 2005, the trial court imposed the upper terms on the incest and oral copulation convictions and consecutive terms on the remaining convictions. In imposing the upper terms, the trial court found as follows: "[T]his was an event that was precipitated and occurred under circumstances . . . where there was an initial encounter with the victim and then there was this promise that it would never happen again and then within minutes the substantive offensive conduct occurred. And all of this . . . leads me to conclude in this particular case this offense is more aggravated and deserves the aggravated term because at the moment it was occurring, Mr. Baughman himself was acknowledging to the victim that he knew what he was doing was wrong and he went ahead and he did it any way and he planned to do it, and it seems to me that those things are undeniable in what were going on here." The court also considered in aggravation that the manner in which the crime was carried out indicates planning, sophistication, or professionalism, and that defendant took advantage of a position of trust or confidence to commit the offense. In mitigation, the court found defendant's criminal history limited and his prior performance on probation satisfactory.
 Before the court announced its ruling, trial counsel stated as follows: "I think the Court ought to consider a two-year sentence or a 16-month sentence. I don't know that this is an aggravated situation. And I will submit."
 Relying on the United States Supreme Court's decisions in Blakely, supra, 542 U.S. 296
[159 L.Ed.2d 403] and Cunningham v. California (2007)___ U.S. ___ [166 L.Ed.2d 856], defendant claims the trial court's imposition of the upper term consecutive sentence violated his federal constitutional right to a jury trial because the aggravating circumstances were not found true by a jury beyond a reasonable doubt or admitted by him. The People respond defendant forfeited this contention because he failed to raise it in the trial court. We agree with the People.
 On June 24, 2004, the United States Supreme Court issued its decision in Blakely, which held that a state trial court's imposition of a sentence that exceeded the statutory maximum of the standard range for the charged offense on the basis of additional factual findings made by the court violated the defendant's Sixth Amendment right to trial by jury. (Blakely, supra, 542 U.S. at pp. 303-305
[159 L.Ed.2d at pp. 413-414].)
 On July 8, 2004, the California Supreme Court granted review of People v. Black (2005)35 Cal.4th 1238, a case which involves the application of Blakely
to consecutive upper term sentencing.
 Defendant's sentencing hearing occurred on June 10, 2005.
 On June 20, 2005, the California Supreme Court decided People v. Black, supra, 35 Cal.4th 1238, and rejected a Blakely claim similar to defendant's, concluding "that the judicial factfinding that occurs when a judge exercises discretion to impose an upper term sentence . . . under California law does not implicate a defendant'sSixth Amendment right to a jury trial." (Black, at p. 1244.)
 On January 22, 2007, the United States Supreme Court held in Cunningham v. California (2007)___ U.S. ___ [166 L.Ed.2d at p. 864], that under Blakely and other decisions, California's determinate sentencing law does "violate? a defendant's right to trial by jury safeguarded by the Sixth and Fourteenth Amendments" to the extent the law allows a judge to impose an upper term sentence "based on a fact, other than a prior conviction, not found by a jury or admitted by the defendant." (Ibid.)
 "`"An appellate court will ordinarily not consider procedural defects or erroneous rulings, in connection with relief sought or defenses asserted, where an objection could have been, but was not, presented to the lower court by some appropriate method. . . . The circumstances may involve such intentional acts or acquiescence as to be appropriately classified under the headings of estoppel or waiver. . . . Often, however, the explanation is simply that it is unfairto the trial judge and to the adverse party to take advantage of an error on appeal when it could easily have been corrected at the trial."' (Doers v. Golden Gate Bridgeetc. Dist. (1979) 23 Cal.3d 180, 184-185, fn. 1, . . . italics in Doers.) `"The purpose of the [forfeiture] doctrine . . . is to encourage a defendant to bring errors to the attention of the trial court, so that they may be corrected or avoided and a fair trial had. . . ."' (People v.Walker (1991) 54 Cal.3d 1013, 1023. . . .) `"No procedural principle is more familiar to this Court than that a constitutional right," or a right of any other sort, "may be forfeited in criminal as well as civil cases by the failure to make timely assertion of the right before a tribunal having jurisdiction to determine it." [Citation.]' (United Statesv. Olano (1993) [507 U.S. 725, 731 [123 L.Ed.2d 508, 517,113 S.Ct. 1770]].)" (People v. Saunders
(1993) 5 Cal.4th 580, 589-590, fn. omitted; see also Peoplev. Scott (1994) 9 Cal.4th 331, 353 [concluding the "waiver doctrine" applies "to claims involving the trial court's failure to properly make or articulate its discretionary sentencing choices"].)
 Here, defendant did not object at sentencing to the court's reliance on facts not found by a jury or admitted by him. We cannot say such an objection would have been futile since he was sentenced after Blakely and after the California Supreme Court had granted review in Black
but 10 days before the court issued its decision inBlack.
 By failing to interpose a Blakely
objection at his sentencing — 12 months afterBlakely was decided and 11 months after review was granted in Black and where no decision in Black hadbeen issued — defendant forfeited his Blakely
claim on appeal. Although we nevertheless have discretion to reach the merits of his claim (People v. Marchand
(2002) 98 Cal.App.4th 1056, 1061), we decline to exercise our discretion here. *Page 28 
 DISPOSITION The judgment is affirmed.
 Sims, Acting P. J., and Hull, J., concurred.
* See footnote, ante, page 22.
[1] Since the jury unanimously agreed defendant had committed all of the acts described by the victim, it necessarily unanimously agreed defendant had committed each specific act.
* See footnote, ante, page 22. *Page 29