Filed 11/9/15  P. v. Linares CA2/7

## NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION SEVEN

| | |
|---|---|
| THE PEOPLE, | B257600 |
| Plaintiff and Respondent, | (Los Angeles County |
| v. | Super. Ct. No. BA415801) |
| MARVIN LINARES, | |
| Defendant and Appellant. | |

APPEAL from a judgment of the Superior Court of Los Angeles County, Laura F. Priver, Judge.  Affirmed.

Nancy L. Tetreault, under appointment by the Court of Appeal, for Defendant and Appellant.

Kamala D. Harris, Attorney General, Gerald A. Engler, Chief Assistant Attorney General, Lance E. Winters, Senior Assistant Attorney General, Yun K. Lee and Nathan Guttman, Deputy Attorneys General, for Plaintiff and Respondent.

_____

Marvin Linares was convicted by a jury on multiple counts of lewd conduct with a child under 14 years old, one count of sexual intercourse or sodomy with a child 10 years old or younger and one count of continuous sexual abuse of a child under 14 years old. On appeal Linares contends ambiguous jury instructions improperly permitted the jury to convict him of continuous sexual abuse based on the same conduct at issue in other counts. He also contends the court erred in failing to give a unanimity instruction in connection with the sexual intercourse count. We affirm.

## FACTUAL AND PROCEDURAL BACKGROUND

1. *The Amended Information*

Linares was charged in an amended information with two counts of committing a lewd act on his daughter Emily, a child under 14 years old, on or between November 5, 2009 and November 4, 2011 (Pen. Code, § 288, subd. (a))[1] (counts 1 & 2); one count of sexual intercourse or sodomy on a child 10 years old or younger on or between November 5, 2009 and November 4, 2011 (§ 288.7, subd. (a))(count 3); one count of continuous sexual abuse of a child under 14 years old during the period November 5, 2011 through July 14, 2013 (§ 288.5, subd. (a)) (count 4); and two counts of committing a lewd act on A.F., a child under 14 years old, on or between October 5, 2000 and October 4, 2001 (§ 288, subd. (a)) (counts 6 & 7).[2] As to the lewd act counts it was specially alleged that Linares had committed a sexual offense against more than one victim within the meaning of section 667.61, subdivisions (b), (c) and (e). As to the counts involving A.F. it was specially alleged that A.F. was under 18 years old at the time of the offense and the prosecution was commenced prior to her 28th birthday (former § 801.1, subd. (a), Stats. 2007, ch. 579, § 40, p. 4845.)[3] Linares pleaded not guilty and denied the special allegations.

---

[1]     Statutory references are to this code.

[2]     The amended information did not include a count 5.

[3]     Former section 801.1, subdivision (a), authorized the commencement of a prosecution for certain enumerated sex crimes with a child victim at any time prior to the

2. *The Trial*

Emily was born in November 2001. Emily testified Linares began sexually molesting her when she was eight or nine years old. At first he removed her clothing from the waist down and touched her bare genitals with his hands. His behavior soon escalated; and, more than once when Emily was eight or nine years old, Linares inserted his penis "inside her." Emily specifically recalled one occasion when she fell asleep on a pile of blankets in her grandmother's room and awoke to find Linares on top of her moving his penis "in and out of [her] vagina." She was scared and did not tell anyone about the abuse.

When Emily was nine years old, Linares left the family home for several months, returning when Emily was 10 years old. By the time he returned, Emily had entered puberty. Linares resumed his molestation of Emily: He put his hand under her shirt to touch her breasts and also placed his mouth on her genitals on more than one occasion. Emily also testified that, beginning when she was 10 years old, he "touch[ed] her body" with his penis like he "used to when I was eight." Emily felt very uncomfortable but was afraid to report the abuse. Emily finally told her aunt Nancy and then her mother. Emily's mother reported the abuse to the police, and she and her children moved out of the family home.

A.F., one of Emily's maternal aunts, was born in October 1993. When A.F. was in first grade, Linares assisted the family by picking up A.F. from school. On more than one occasion Linares drove with A.F. to an alley, placed her on his lap in the backseat, pushed aside her skirt, pulled down her underpants and touched her vagina with his fingers. A.F. also described an assault that occurred when she was in the first grade and alone with Linares at home. After ordering her to remove her clothing and lie down on a bed, Linares put hair wax on his fingers and touched her vagina. A.F. initially did not tell

victim's 28th birthday. (Stats. 2007, ch. 579, § 40, p. 4845.) Effective January 1, 2015, section 801.1 was amended to expand that limitation period to any time prior to the victim's 40th birthday. (See Stats. 2014, ch. 921, § 1.)

anyone about the abuse because she feared she might get in trouble and believed she was somehow to blame. A.F. moved to Oregon a short time later with her family and returned to Los Angeles when she was in the 11th grade. When A.F. learned Linares had abused Emily, she revealed to her family that Linares had also sexually abused her.

During an interview with Los Angeles Police Detective Blanca Pasos, Linares asked, "Can someone be blamed for something when they don't remember doing it or when they were incoherent when they did it or they were doing it? How can you find me guilty if I don't remember doing it?" Linares testified in his own defense at trial and denied asking Detective Pasos this question. He also denied any sexual misconduct toward Emily or A.F. He believed Emily was retaliating against him because he had taken away her cell phone for a month. He was surprised A.F. was accusing him of sexual misconduct and insisted both she and Emily were lying.

3. *The Verdict and Sentence*

The jury convicted Linares on all counts and found the special allegations true. Linares was sentenced to an aggregate indeterminate state prison term of 55 years to life.[4]

## DISCUSSION

1. *There Is No Reasonable Likelihood the Jury Believed It Could Convict Linares of Continuous Sexual Abuse Based on the Same Acts That Were the Subject of Other Counts*

Section 288.5, subdivision (a), provides, "Any person who either resides in the same home with the minor child or has recurring access to the child, who over a period of time, not less than three months in duration, engages in three or more acts of substantial sexual conduct with a child under the age of 14 years at the time of the commission of the offense . . . or three or more acts of lewd or lascivious conduct . . . is guilty of the offense of continuous sexual abuse of a child . . . ." Subdivision (c) of section 288.5 provides,

---

[4]     As calculated, Linares's sentence consisted of 25 years to life for count 3 (§ 288.7, subd. (a)), plus a full, consecutive 15 years to life for count 4 (§§ 288.5, subd. (a), 667.6, subds. (d), (e)(6)), plus a full consecutive 15 years to life for count 6 (§§ 288, subd. (a), 667.61, subds. (b), (c)). The court imposed concurrent 15-year-to-life terms for counts 1, 2 and 7.

4

"No other [felony sex offense] involving the same victim may be charged in the same proceeding with a charge under this section unless the other charged offense occurred outside the time period charged under this section or the other offense is charged in the alternative."

Linares acknowledges the time period identified in the amended information for count 4's charge of continuous sexual abuse did not overlap with the dates alleged in the other counts pertaining to Emily and thus complied with section 288.5, subdivision (c). Specifically, as charged, count 4 applied to acts on or after November 5, 2011, after Emily turned 10 years old, while counts 1, 2 and 3 charged lewd acts during the period November 5, 2009 through November 4, 2011, when Emily was eight and nine years old. However, the amended information was not given to the jury; and none of the jury instructions identifying the elements of the charges, including the instruction for continuous sexual abuse (count 4), contained any specific dates. Emphasizing that omission, Linares contends the continuous sexual abuse instruction permitted the jury to find him guilty on that count for acts during the same time period as those that were the subject of counts 1, 2 and/or 3, in violation of section 288.5, subdivision (c).[5] (See *People v. Johnson* (2002) 28 Cal.4th 240, 248 [a defendant may be charged in the alternative with both continuous sexual abuse under section 288.5 and a discrete act of sexual abuse during the same time period against the same victim but cannot be convicted of both].)

In reviewing a claim of instructional error, we must determine whether "'there was a reasonable likelihood the jury applied the challenged instruction in an impermissible

---

[5] As to count 4 the jury was instructed with CALCRIM No. 1120: "The defendant is charged in Count 4 with continuous sexual abuse of a child under the age of 14 years in violation of Penal Code section 288.5, [subdivision] (a). [¶] To prove that the defendant is guilty of this crime, the People must prove that: [¶] 1. The defendant lived in the same home with or had recurring access to a minor child; [¶] 2. The defendant engaged in three or more acts of substantial sexual conduct or lewd or lascivious conduct with the child; [¶] 3. Three or more months passed between the first and last acts; AND [¶] 4. The child was under the age of 14 years at the time of the acts. . . ."

manner.' [Citation.] 'The correctness of jury instructions is to be determined from the entire charge of the court, not from a consideration of parts of an instruction or from a particular instruction.' [Citation.] 'Moreover, any theoretical possibility of confusion [may be] diminished by the parties' closing arguments.'" (*People v. Hajek and Vo* (2014) 58 Cal.4th 1144, 1220; accord, *People v. Houston* (2012) 54 Cal.4th 1186, 1229 ["[w]hen considering a claim of instructional error, we review the challenged instruction in the context of the instructions as a whole and the trial record to determine whether there is a reasonable likelihood the jury applied the instruction in an impermissible manner"].)

As Linares argues, the omission of specific dates in several instructions pertaining to the elements of counts 1 through 4, considered in isolation, created the potential for an overlapping period between count 4, continuous sexual abuse of a child under 14 years, and the other offenses involving Emily. However, any ambiguity was clarified and the potential for overlap removed by other instructions and closing argument. In particular, the jury was instructed with CALCRIM No. 3501, a unanimity instruction that specifically identified November 5, 2009 to November 4, 2011, when Emily was eight and nine years old, as the pertinent time period for counts 1 and 2.[6] The prosecutor also made clear during closing argument that the act of sexual intercourse at issue for count 3 occurred during the same time period as counts 1 and 2: "Sexual intercourse with a child 10 years and younger is count 3[,] [t]he third charge alleged against the defendant. It's alleged within the same time frame as the first two lewd acts and I simply must prove the

_____

[6] As given CALCRIM No. 3501 provided in part, "The defendant is charged with Lewd Act upon a Child in Counts 1, 2, 6 and 7 sometime during the period of November 5, 2009 to November 4, 2011 as to Counts 1 and 2 and October 5, 2000 and October 4, 2001 as to Counts 6 and 7. [¶] The People have presented evidence of more than one act to prove that the defendant committed these offenses. You must not find the defendant guilty unless: [¶] 1. You all agree that the People have proved that the defendant committed at least one of these acts and you all agree on which act he committed for each offense; [¶] OR [¶] 2. You all agree that the People have proved that the defendant committed all the acts alleged to have occurred during this time period and have proved that the defendant committed at least the number of offenses charged."

6

defendant engaged in some act of sexual intercourse. . . . We know she said it [sexual penetration of the genital area] was [when she] was eight or nine years old[,] before he left. So the only question then is did he engage in an act of sexual intercourse or sodomy?" "The [charge of] intercourse with a child under 11 [is] intended to account for that time before the defendant had the break in contact. Emily told you she thought [she was] eight or nine, but before 10. It accounts for that period of time."

Significantly, as to count 4, the prosecutor emphasized repeatedly that the crime of continuous sexual abuse involved a time period different from, and later than, the time period for counts 1 through 3. After outlining the charges in counts 1 through 3 in the beginning of closing argument, the prosecutor explained count 4 involved sexual assaults after Emily's 10th birthday: "[A]fter she turned 10 until the time she told the police," she says "well there [is] stuff happening all the time. . . . Her 10th birthday is the start. That's around the period you heard from all the witnesses that Mr. Linares left, was away from the family for a chunk of time." To make sure the jury understood the crime of continuous sexual abuse involved a later time period than the other counts, the prosecutor further stated: "When you get the instructions you'll see a couple pages about [continuous sexual abuse]. . . . [T]he reason the code and the instructions are so long is because those acts can be lots of different things so long as they are sexual crimes committed against children. It can be intercourse. It can be oral copulation. It could be touching. It could even be touching over the clothes. So long as it was three or more over a period of three months. The way it's charged it starts from when Emily turned 10 until July 2013 [when] the crime was reported. So we've got way more than three months. That's the time period after the defendant got back from being away from the family and Emily talked about it happening, different things happening multiple times."

Linares acknowledges the unanimity instruction in CALCRIM No. 3501 adequately advised the jury that counts 1 and 2 involved acts occurring when Emily was eight and nine years old. However, he argues, even if the prosecutor's closing argument clarified that the continuous sexual abuse count covered the period beginning when Emily was 10 years old, outside the period of counts 1 and 2, the omission of count 3

7

from the unanimity instruction unlawfully permitted the jury to convict him of both the discrete crime of sexual intercourse with a child 10 years old and younger (count 3) and continuous sexual abuse of a child under 14 years old (count 4) for acts occurring during an overlapping time period—when Emily was 10 years old. Again, Linares ignores the totality of the record. As discussed, the prosecutor specified the acts of sexual intercourse at issue in count 3 took place, like the two acts of lewd conduct charged in counts 1 and 2, before Linares left the family home, when Emily was eight or nine years old. When the record is considered as a whole, there is no reasonable likelihood the jury interpreted the instructions as Linares suggests and convicted him on count 4 based on acts that occurred before Emily was 10 years old.

2. *The Court's Failure To Give a Unanimity Instruction for Count 3, Although Error, Was Harmless Beyond a Reasonable Doubt*

A criminal defendant's right to a jury trial includes the right to a unanimous verdict, including unanimous agreement on the act constituting the offense charged. (Cal. Const., art. I, § 16, *People v Russo* (2001) 25 Cal.4th 1124, 1132.) Therefore, when an accusatory pleading charges a single criminal act and the evidence shows more than one such unlawful act, either the prosecution must elect among the crimes or the court must require the jury to agree on the same criminal act beyond a reasonable doubt. (*Russo,* at p. 1132.) "This requirement of unanimity as to the criminal act 'is intended to eliminate the danger that the defendant will be convicted even though there is no single offense which all the jurors agree the defendant committed.'" (*Ibid.*)

The trial court has a sua sponte duty to give a unanimity instruction when supported by the evidence. (*People v. Riel* (2000) 22 Cal.4th 1153, 1199.) We review the failure to give a unanimity instruction de novo. (*People v. Hernandez* (2013) 217 Cal.App.4th 559, 569.)

Because Emily testified there was more than one act of sexual intercourse when she was eight or nine years old, Linares contends the court erred in failing to include

count 3 in the unanimity charge to the jury.[7] The People, on the other hand, contend a unanimity instruction was unnecessary as to count 3 because the prosecutor elected a single act of intercourse to be the subject of that count, namely, when Emily awoke on the pile of blankets in her grandmother's bedroom to find Linares on top of her. While Emily provided her most detailed testimony about that particular sexual assault, she also testified sexual intercourse with Linares had occurred more than once when she was eight or nine years old. There is nothing in the instructions, closing argument or elsewhere in the record to support a clear election of the sexual assault on the blankets as the single offense for count 3.

Nonetheless, given the jury's clear rejection of Linares's only defense—Emily had fabricated all of the allegations of sexual abuse in retaliation for being disciplined—any error in the omission of a unanimity instruction as to count 3 was harmless beyond a reasonable doubt:[8] The jury necessarily believed Emily's testimony; and there was no argument, let alone evidence, to suggest Linares had committed some, but not all, of the acts she had described. (See *People v. Curry* (2007) 158 Cal.App.4th 766, 783 [when "'the record provides no rational basis, by way of argument or evidence, for the jury to distinguish between the various acts, and the jury must have believed beyond a

---

[7]    As discussed, the unanimity instruction given to the jury addressed counts 1, 2, 6 and 7 and did not require the jury to agree on which act of intercourse was at issue in count 3.

[8]    Appellate courts are divided as to the standard of prejudice to apply to the failure to give a unanimity instruction. (Compare *People v. Vargas* (2001) 91 Cal.App.4th 506, 561 [applying state law standard of *People v. Watson* (1956) 46 Cal.2d 818, 836] with *People v. Smith* (2005) 132 Cal.App.4th 1537, 1545 [applying federal constitutional standard of *Chapman v. California* (1967) 386 U.S. 18, 24 [87 S.Ct. 824, 17 L.Ed.2d 705]]; see also *People v. Hernandez, supra,* 217 Cal.App.4th at pp. 576-577 [discussing the split of authority and citing cases].) The majority of courts that have addressed this issue have applied the *Chapman* standard for federal constitutional error, concluding, as do we, that the failure to give the unanimity instruction can result in lowering the prosecution's burden of proof in a criminal case, an error of federal constitutional dimension. (See *People v. Curry* (2007) 158 Cal.App.4th 766, 784; *People v. Wolfe* (2003) 114 Cal.App.4th 177, 186.)

9

reasonable doubt that defendant committed all acts if he committed any, the failure to give a unanimity instruction is harmless'" beyond a reasonable doubt]; *People v. Brown* (1996) 42 Cal.App.4th 1493, 1502 [where defendant's only defense to molestation charges was that victim was lying and none of the incidents occurred, and there was no evidence or argument to discriminate between one act of molestation and another, failure to give unanimity instruction, although error, was harmless beyond a reasonable doubt]; *People v. Thompson* (1995) 36 Cal.App.4th 843, 853 ["[w]here the record indicates the jury resolved the basic credibility dispute against the defendant and therefore would have convicted him of any of the various offenses shown by the evidence, the failure to give the unanimity instruction is harmless"].)

## DISPOSITION

The judgment is affirmed.

PERLUSS, P. J.

We concur:

SEGAL, J.

BECKLOFF, J.[*]

---

[*]    Judge of the Los Angeles County Superior Court, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.