Filed 12/23/13  P. v. Diaz CA5

# NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

## IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## FIFTH APPELLATE DISTRICT

| | |
|---|---|
| THE PEOPLE,<br><br>    Plaintiff and Respondent,<br><br>        v.<br><br>DARRYL VERNON DIAZ, JR.,<br><br>    Defendant and Appellant. | F064496<br><br>(Super. Ct. No. F09900488)<br><br><br>**OPINION** |

-ooOoo-

APPEAL from a judgment of the Superior Court of Fresno County.  Arlan L. Harrell, Judge.

Chris R. Redburn, under appointment by the Court of Appeal, for Defendant and Appellant.

Kamala D. Harris, Attorney General, Dane R. Gillette, Chief Assistant Attorney General, Michael P. Farrell, Assistant Attorney General, Kathleen A. McKenna and Rebecca Whitfield, Deputy Attorneys General, for Plaintiff and Respondent.

-ooOoo-

On October 12, 2011, a jury convicted defendant Darryl Vernon Diaz, Jr., of three counts of sexual intercourse or sodomy with a child 10 years of age or younger (Pen. Code, § 288.7, subd. (a); counts 1-3) and three counts of committing a lewd act upon a child (*id.*, § 288, subd. (a); counts 4-6). On appeal, defendant argues the trial court's failure to provide a unanimity instruction constitutes reversible error. He also disputes the admissibility of pornographic images extracted from his computer and the constitutionality of Judicial Council of California Criminal Jury Instructions (CALCRIM) No. 1191.

We find the trial court erred when it failed to instruct the jury on the requirement of a unanimous agreement as to the acts committed by defendant. While the record disclosed various and multiple acts of molestations, however, defendant offered one defense: The sole percipient witness lacked credibility. The jury's guilty verdict on all counts resolved the credibility dispute against defendant. Under these circumstances, the error was harmless beyond a reasonable doubt.

We further find the trial court did not abuse its discretion when it admitted five of the approximately 2,500 images of child pornography on defendant's computer and CALCRIM No. 1191 is constitutional.

We affirm the judgment.

## STATEMENT OF FACTS

I. Prosecution Evidence

On or around October 12, 2008, E.,[1] then nine years of age,[2] attended a celebrity golf tournament with defendant, her legal father. The following night, while she was

---

[1] In this opinion, certain persons are identified by an abbreviated name in accordance with our Supreme Court's policy regarding protective nondisclosure. Also, individuals who share a last name are identified primarily by their first name to avoid confusion. In both instances, no disrespect is intended.

[2] At the time of trial, E. was 12 years of age.

sleeping in his bedroom, she awoke to him "breathing behind [her]" and "touching [her] butt with his no-no."[3]  Roughly one week before January 17, 2009, E. was watching cartoons at defendant's apartment when defendant used a cable to connect his desktop computer to the television.  He showed her "nasty videos" and pictures from his computer "up on the TV" of adults, teenagers, and preadolescents "kissing," "touching their private parts," and "doing the bad thing."[4]  Defendant had E. sit on his lap, placed his hand on her crotch, had her remove her panties, and touched her vagina.  When she went to the bathroom, he pulled down his pants.  Defendant went to E., who had returned and sat on the couch, and touched her with his penis.  He laid her on her back, partially inserted his penis into her vagina for at least five seconds, and withdrew when she expressed pain.  Defendant then repositioned E. on her stomach, partially inserted his penis into her anus, and withdrew when she expressed pain.  At some point, he touched her breasts.

E. described other incidents that transpired at defendant's apartment "[e]very other week or so" between October 12, 2008, and January 15, 2009.  When she watched the television show *American Idol*,[5] defendant rubbed her crotch, watched pornography and masturbated during commercial breaks, and deposited his semen onto her toes and hand.  When she did not watch *American Idol*, he watched pornography and touched her in the living room and bedroom.  The "bad touching" did not occur on Wednesdays.  E. saw defendant ejaculate on previous occasions and specified that he inserted his penis into her anus "less than five times, but at least two times[.]"  She was warned by defendant "[not

---

[3]     E. identified the male "no-no" as the penis and female "no-no" as the vagina.

[4]     E. testified that she watched such videos on at least five occasions.

[5]     The prosecutor and defense counsel stipulated that *American Idol* aired on KMPH Fox 26 the nights of Tuesday, January 13, 2009, and Wednesday, January 14, 2009.

to] tell anybody about what's happening, because if [she] do[es], he'll get in trouble and [she]'ll get in trouble."

During a sleepover at the home of A.E., E.'s mother and defendant's ex-wife, on Saturday, January 17, 2009, E. revealed to Emily C., her friend, that defendant touched her, masturbated, deposited "white stuff" between her toes, and "tried to stick his private part inside of hers but it hurt too much so he quit." Thereafter, at Emily's insistence, E. told A.E. that defendant "would take the white stuff out of his man part and put it between her toes," "made her watch weird Web sites," and "tried to put his man part in her no-no but she was too loud so he stopped." A.E. had E.E., then her husband, call the police.

Officer Jay Froman, Jr., was dispatched to A.E.'s home on January 17, 2009. He interviewed E., who detailed that defendant "tried to put his penis in her vagina," "play[ed] with his no-no part," had her "rub[] [his penis] up and down," ejaculated "onto her face" or "into his hand and then rub[bed] it on her feet," and used his middle and index fingers to "spread apart … and … rub her private parts … 'like someone who was trying to get chocolate sauce off their fingers[.]'" The incidents occurred "[o]ver the last year." E. also told Froman that defendant let her stay up past her bedtime to watch *American Idol* only if she looked at Web sites containing videos and images of "boys' no-no parts going into the girl's private parts" and he "g[o]t to cum in [her] mouth."[6]

On January 18, 2009, the police executed a search warrant at defendant's apartment. Forensic analysis of his computer's internal hard drive uncovered approximately 2,500 images of child pornography and related search terms. The trial

---

**6** According to Froman, E. denied that defendant actually ejaculated into her mouth because "it made her sick when he ejaculated onto her face and that is why she would not let him do that in her mouth."

court admitted five of these images as circumstantial evidence of propensity and the jury viewed each image for three seconds via slide-show presentation.[7]

## II.    Defense Evidence

On January 18, 2009, E. underwent a forensic medical examination for sexual abuse. She did not sustain genital abrasions, bruising, redness, tearing, swelling, or bleeding or exhibit signs of previous trauma or healed injuries. Judy Malmgren, a registered nurse and certified sexual assault nurse examiner, reviewed the examination records and opined that the lack of physical findings was "consistent with no acts of sexual penetration having occurred[.]" She also attested that "it is not unusual for there to be no findings with a child sexual assault allegation" and an absence of findings may result when vaginal or anal penetration is slight. Laboratory analysis of two pairs of panties belonging to E., taken from defendant's apartment, did not detect semen.

E. was interviewed by Maria Gutierrez at the Multi-Disciplinary Interview Center (MDIC) on January 22, 2009. She told Gutierrez that defendant touched her crotch and chest for the first time in 2007 when she was watching the television show *Extreme Makeover: Home Edition*. The next day, he "French kiss[ed]" her more than once.[8] During the last three incidents, which occurred on the Monday, Tuesday, and Thursday before E. went to A.E.'s home, defendant touched E.'s breasts, watched pornography, masturbated, ejaculated, and deposited semen on her face and toes. In addition, on Monday, he pulled down her underwear and licked her vagina. E. recalled that she watched *American Idol* on Monday and Tuesday. She denied that defendant touched her in any other manner or made her touch his body. E. did not tell Gutierrez that he inserted his penis into her vagina or anus.

---

**7**    The trial court denied defense counsel's motion in limine to exclude all pornographic images from evidence. Defense counsel made a continuing objection.

**8**    E. defined a French kiss as "[when] he would use your tongue while kiss[ing] you" and "one person kisses another person with their mouth[s] open."

At the preliminary hearing held on June 10, 2009, E. testified that defendant kissed her on the mouth, touched her breasts and vagina, made her look at pornographic videos and images on his computer, made her touch his penis, inserted his penis into her vagina for approximately two minutes four times, ejaculated, and deposited semen on her stomach and feet sometime in the fall during a Monday broadcast of *American Idol*. Identical acts also took place the following Tuesday and Thursday.

On cross-examination, E. was shown footage of her MDIC interview and read transcripts of this interview and her preliminary hearing testimony. She often testified that she could neither remember her previous statements nor understand defense counsel's questions.

Dr. Susan Napolitano, a psychologist with expertise in forensic interviews of children for sexual abuse, reviewed the videotape and transcript of E.'s MDIC interview. She opined that Gutierrez failed to comply with proper protocol during the information-gathering stage. In particular, Gutierrez seldom asked open-ended questions, often asked leading questions, raised "a barrage of, 'Anything else?' questions" after many of E.'s responses, and displayed confirmatory bias. Napolitano concluded that the interview "strayed so significantly" from protocol as to heighten the risk of creating false memories and obtaining inaccurate information.

III.    Jury Instructions

The trial court, upon the request of both the prosecutor and defense counsel, gave the following modified CALCRIM No. 1191 (Evidence of Uncharged Sex Offense):

> "The People presented evidence that the defendant committed the crime of possessing matter depicting minors engaging in or simulating sexual conduct that was not charged in this case…. [¶] You may consider this evidence only if the People have proved by a preponderance of the evidence that the defendant in fact committed the uncharged offenses. Proof by a preponderance of the evidence is a different burden of proof from proof beyond a reasonable doubt. A fact is proved by a preponderance of the evidence if you conclude that it is more likely than

not that the fact is true.  [¶]  If the People have not met this burden of proof, you must disregard this evidence entirely.

"If you decide that the defendant committed the uncharged offense, you may, but are not required to, conclude from that evidence that the defendant was disposed or inclined to commit sexual offenses, and based on that decision, also conclude that the defendant was likely to commit the crimes of sexual intercourse or sodomy with a child 10 years of age or younger and/or lewd acts upon a child, as charged.  If you conclude that the defendant committed the uncharged offense, that conclusion is only one factor to consider along with all the other evidence.  It is not sufficient by itself to prove that the defendant is guilty of the crimes of sexual intercourse or sodomy with a child 10 years of age or younger and/or lewd acts upon a child.  The People must still prove each charge beyond a reasonable doubt.  [¶]  Do not consider this evidence for any other purpose."

Defense counsel did not object to this instruction.

The prosecutor requested an instruction conforming with either CALCRIM No. 3500 (Unanimity)[9] or CALCRIM No. 3501 (Unanimity: When Generic Testimony of Offense is Presented).[10]  The court did not provide a unanimity instruction.



[9]     CALCRIM No. 3500 reads:

"The defendant is charged with _____ *<insert description of alleged offense>* [in Count _____ ] [sometime during the period of _____ to _____ ].  [¶]  The People have presented evidence of more than one act to prove that the defendant committed this offense.  You must not find the defendant guilty unless you all agree that the People have proved that the defendant committed at least one of these acts and you all agree on which act (he/she) committed."

[10]     CALCRIM No. 3501 reads:

"The defendant is charged with _____ *<insert description[s] of alleged offense[s]>* [in Count[s] _____ ] sometime during the period of _____to _____.  [¶]  The People have presented evidence of more than one act to prove that the defendant committed (this/these) offense[s].  You must not find the defendant guilty unless:  [¶]  1. You all agree that the People have proved that the defendant committed at least one of these acts and you all agree on which act (he/she) committed [for each offense];  [¶]  OR  [¶]  2. You all agree that the People have proved that the defendant

7.

IV.     Closing Arguments

The prosecutor remarked in closing:

"Ladies and Gentlemen, if you have listened to this evidence and you feel that [E.] told the truth and that the defendant penetrated her vagina at least one time, Count One is guilty. If you think that he penetrated her butt, her anus, her backside, Count Two, guilty. The People aren't saying it only happened three times. The People are just -- at least three times. If you feel that he penetrated her a third time, anal, vaginal, if you believe the evidence shows this happened, that is Count Three. You don't have to agree -- you all have to agree on the type of penetration. You don't have to agree on what happened, only that it happened and that it is the same event. So if you all agree on that, Count One, Count Two, and Count Three are guilty.

"As to Counts Four, Five and Six -- if you believe that he touched her on her vagina one time, that's Count Four. If you believe he did it at least three times, that is Four, Five and Six, he is guilty. If you believe he ejaculated on her and had her rub -- and had her touch his penis, that count[s]. If you believe that he kissed her or touched her in any other inappropriate manner and you all agree on the same facts, he did these things -- once again, we're not saying it only happened three times, we're saying it happened at least three times. Because we all know [E.] told you it happened a lot over those three months, almost half the time she ever watched American Idol, and also during other times. All you have to do is agree that the same conduct occurred and the same conduct occurred more than once. [¶] You have plenty to pick from."

Defense counsel contended that E. offered inconsistent accounts of what took place and therefore lacked credibility. He also asserted that A.E.had E. allege molestation against defendant to allow her, her children, and E.E. to move out of state without defendant's interference.

---

committed all the acts alleged to have occurred during this time period [and have proved that the defendant committed at least the number of offenses charged]."

8.

**DISCUSSION**

Defendant makes three contentions on appeal. First, the trial court's failure to provide a unanimity instruction was not harmless beyond a reasonable doubt. Second, the pornographic images offered by the prosecution as circumstantial evidence of propensity should have been excluded as unfairly prejudicial. Last, CALCRIM No. 1191 is unconstitutional. We now address each issue.

I.    The trial court's failure to provide a unanimity instruction was harmless beyond a reasonable doubt.

In a criminal case, a jury verdict must be unanimous. (*People v. Russo* (2001) 25 Cal.4th 1124, 1132.) The unanimity requirement is founded on the constitutional principle that a criminal defendant is entitled to a verdict in which all 12 jurors agree, beyond a reasonable doubt, as to each count charged. (*People v. Brown* (1996) 42 Cal.App.4th 1493, 1499-1500, citing Cal. Const., art. I, § 16 & *People v. Jones* (1990) 51 Cal.3d 294, 305, 321 (*Jones*); see also *People v. Hernandez* (2013) 217 Cal.App.4th 559, 570 (*Hernandez*) ["The importance of the unanimity instruction is rooted in the Fourteenth Amendment to the United States Constitution's requirement that all criminal defendants are afforded due process of law."].) "'When the evidence tends to show a larger number of distinct violations of the charged crime than have been charged and the prosecution has not elected a specific criminal act or event upon which it will rely for each allegation, the court must instruct the jury on the need for unanimous agreement on the distinct criminal act or event supporting each charge….'" (*People v. Whitham* (1995) 38 Cal.App.4th 1282, 1295.) "In a case in which the evidence indicates the jurors might disagree as to the particular act defendant committed, the standard unanimity instruction should be given. [Citation.] But when there is no reasonable likelihood of juror disagreement as to particular acts, and the only question is whether or not the defendant in fact committed all of them, the jury should be given a modified unanimity instruction which, in addition to allowing a conviction if the jurors unanimously agree on specific

9.

acts, also allows a conviction if the jury unanimously agrees the defendant committed all the acts described by the victim." (*Jones*, *supra*, at pp. 321-322.) Whether a particular instruction should have been given in a case is a predominantly legal question reviewed under the de novo standard. (See *People v. Waidla* (2000) 22 Cal.4th 690, 733.)

In the instant case, defendant was charged with three counts of sexual intercourse or sodomy in violation of Penal Code section 288.7, subdivision (a). E.'s testimony indicated a larger number of violations than were charged: penetration of her vagina and anus about a week before January 17, 2009, and penetration of her anus on two to five other occasions between October 12, 2008, and January 15, 2009. Defendant was also charged with three counts of committing a lewd act in violation of Penal Code section 288, subdivision (a). Again, E.'s testimony indicated a larger number of violations than were charged: touching of her buttocks sometime after October 12, 2008; touching of her breasts and vagina and placement of the exposed penis on her body about a week before January 17, 2009; and rubbing of her vagina, ejaculation of semen onto her face, depositing of semen onto her hand and toes, and having her rub the penis "[e]very other week or so" between October 12, 2008, and January 15, 2009. The prosecutor did not elect a specific act for each count and the trial court, in error, failed to provide sua sponte any unanimity instruction.[11] (See *Hernandez*, *supra*, 217 Cal.App.4th at p. 569.) Hence, the question now before us is whether this error requires reversal of defendant's conviction.

We apply the test set forth in *Chapman v. California* (1967) 386 U.S. 18, 24 (*Chapman*) to determine whether the trial court's failure to provide a unanimity instruction was harmless beyond a reasonable doubt.[12] (See, e.g., *People v. Gary* (1987)

---

[11] The Attorney General also concedes that the charged offenses did not fall under the "continuous course of conduct" exception.

[12] We recognize a split of authority as to the proper standard for prejudicial error in unanimity instruction cases. We adhere to the majority rule that the *Chapman* test is

10.

189 Cal.App.3d 1212, 1218; *People v. Metheney* (1984) 154 Cal.App.3d 555, 563-564, fn. 5.) Under *Chapman*, "[w]here the record provides no rational basis, by way of argument or evidence, for the jury to distinguish between the various acts, and the jury must have believed beyond a reasonable doubt that defendant committed all acts if he committed any, the failure to give a unanimity instruction is harmless." (*People v. Thompson* (1995) 36 Cal.App.4th 843, 853 (*Thompson*).) For instance, "where the defendant offered the same defense to all criminal acts, and 'the jury's verdict implies that it did not believe the only defense offered,' failure to give a unanimity instruction is harmless error." (*Hernandez, supra*, 217 Cal.App.4th at p. 577, citing *People v. Diedrich* (1982) 31 Cal.3d 263, 283 (*Diedrich*).) Additionally, "[w]here the record indicates the jury resolved the basic credibility dispute against the defendant and therefore would have convicted him of any of the various offenses shown by the evidence, the failure to give the unanimity instruction is harmless." (*Thompson, supra*, at p. 853.)

We conclude the trial court's failure to provide a unanimity instruction was harmless beyond a reasonable doubt. Here, the record does not provide a rational basis for the jury to distinguish among the various acts of molestation alleged so as to find defendant guilty of some of these acts but not guilty of others. (See *People v. Deletto* (1983) 147 Cal.App.3d 458, 466, 473.) The prosecution's case, devoid of third-party eyewitnesses and physical evidence of molestation, rested on E.'s testimony describing sexual abuse at the hands of defendant for a three-month period. Aside from the first and last incidents, she blurred together the acts. In his closing argument, the prosecutor did not differentiate among the violations, stating inter alia that the jury had "plenty to pick from." On the other side, defense counsel had E. watch footage of her MDIC interview

---

correct. (See *Hernandez, supra*, 217 Cal.App.4th at p. 576; but see *People v. Vargas* (2001) 91 Cal.App.4th 506, 562 [applying test set forth in *People v. Watson* (1956) 46 Cal.2d 818, 836].)

and read transcripts of this interview and her preliminary hearing testimony. He then elicited testimony tending to show her flawed recollection of the events in question. Napolitano also testified that E.'s MDIC interview may have been compromised by the interviewer's disregard of protocol. In his closing argument, defense counsel presented a single defense to each charge, namely that E. lied at the behest of her mother. (See *Thompson*, *supra*, 36 Cal.App.4th at p. 853 [different defenses gave the jury a rational basis to distinguish between various acts].)

Furthermore, the jury's return of a guilty verdict on all counts indicated that it rejected in toto defendant's unitary defense, resolved the credibility dispute against him, and established beyond a reasonable doubt that defendant committed the acts described by E. (See *Hernandez*, *supra*, 217 Cal.App.4th at p. 577; see also *Jones*, *supra*, 51 Cal.3d at p. 321, original italics ["[I]f an information charged *two* counts of lewd conduct during a particular time period, the child victim testified that such conduct took place *three times* during that same period, and the jury believed that testimony in toto, its difficulty in differentiating between the various acts should not preclude a conviction of the two counts charged, so long as there is no possibility of jury disagreement regarding the defendant's commission of any of these acts."].) In other words, even without an appropriate instruction, the unanimity requirement was satisfied. (See *Jones*, *supra*, at p. 322, quoting *People v. Moore* (1989) 211 Cal.App.3d 1400, 1414 ["[In child molestation cases], the jury either will believe the child's testimony that the consistent, repetitive pattern of acts occurred or disbelieve it. In either event, a defendant will have his unanimous jury verdict [citation] and the prosecution will have proven beyond a reasonable doubt that the defendant committed a specific act, for if the jury believes the defendant committed all the acts it necessarily believes he committed each specific act [citations]."].)

Defendant argues that *People v. Smith* (2005) 132 Cal.App.4th 1537 (*Smith*) supports reversal of his conviction. We disagree. In *Smith*, the accused was charged with

12.

10 counts of lewd and lascivious conduct with a child under 14 years of age. (*Id.* at p. 1540.) The trial court instructed the jury that "'[it] must unanimously agree that the prosecution proved beyond a reasonable doubt that the defendant committed all the acts described by the alleged victim,'" but failed to also provide the specific acts unanimity instruction in compliance with *Jones*, *supra*, 51 Cal.3d 294. (*Smith*, *supra*, at pp. 1540, 1543, italics omitted.) In finding prejudicial error under *Chapman*, the Third Appellate District examined the conduct of the jury, which ignored the only instruction given and convicted on the first count, failed to reach a verdict on the second count, and acquitted on the remaining counts, and concluded that it could not declare beyond a reasonable doubt that "the jury acted in a manner that suggests that it focused on the same specific act of molestation when it reached its decision on count one." (*Smith*, *supra*, at p. 1546.) Here, by contrast, the trial court did not instruct the jurors that a conviction is allowed if they unanimously agree either on the specific acts or that defendant committed all the acts described by E. Nonetheless, their verdict convicting defendant on all counts, in view of the circumstances of this case, would have followed an instruction conforming with CALCRIM No. 3501 had it been given.

II.    <u>Five images of child pornography extracted from defendant's computer and offered by the prosecution as circumstantial evidence of propensity were admissible; their probative value outweighed their prejudicial effect.</u>

Generally, "evidence of a person's character or a trait of his or her character (whether in the form of an opinion, evidence of reputation, or evidence of specific instances of his or her conduct) is inadmissible when offered to prove his or her conduct on a specified occasion." (Evid. Code, § 1101, subd. (a).)[13] However, in a criminal action in which a defendant is accused of a sexual offense, evidence of the defendant's commission of another sexual offense is not made inadmissible by section 1101, so long

[13]    All subsequent statutory citations refer to the Evidence Code unless otherwise indicated.

13.

as the evidence is not made inadmissible by section 352.  (§ 1108, subd. (a).)  The California State Legislature enacted section 1108 to "relax the evidentiary restraints" imposed by section 1101, "expand the admissibility of disposition or propensity evidence in sex offense cases," and "assure that the trier of fact would be made aware of the defendant's other sex offenses in evaluating the victim's and the defendant's credibility." (*People v. Falsetta* (1999) 21 Cal.4th 903, 911 (*Falsetta*).)  The Legislature recognized that sex crimes "[b]y their very nature … are usually committed in seclusion without third party witnesses or substantial corroborating evidence" and "[t]he ensuing trial often presents conflicting versions of the event and requires the trier of fact to make difficult credibility determinations."  (*Id.* at p. 915.)  In view of "'the serious and secretive nature of sex crimes and the often resulting credibility contest at trial,'" evidence of a defendant's willingness to commit a sexual offense, an attribute "'not common to most individuals[,] … is particularly probative and necessary for determining the credibility of the witness.'"  (*Id.* at pp. 911-912.)

In evaluating the admissibility of propensity evidence under section 1108, the trial court must decide whether the evidence is excluded by section 352.  (*People v. Robertson* (2012) 208 Cal.App.4th 965, 990 (*Robertson*); see also *Falsetta*, *supra*, 21 Cal.4th at pp. 916-921 [describing § 352 as safeguard supporting the constitutionality of § 1108].) "The court in its discretion may exclude evidence if its probative value is substantially outweighed by the probability that its admission will (a) necessitate undue consumption of time or (b) create substantial danger of undue prejudice, of confusing the issues, or of misleading the jury."  (§ 352.)  Factors to weigh include the "nature, relevance, and possible remoteness [of the uncharged sex offense], the degree of certainty of its commission and the likelihood of confusing, misleading, or distracting the jurors from their main inquiry, its similarity to the charged offense, its likely prejudicial impact on the jurors, the burden on the defendant in defending against the uncharged offense, and the availability of less prejudicial alternatives to its outright admission, such as admitting

14.

some but not all of the defendant's other sex offenses, or excluding irrelevant though inflammatory details surrounding the offense." (*Falsetta*, *supra*, 21 Cal.4th at p. 917.) Evidence should be excluded as unduly prejudicial ""''when it is of such nature as to inflame the emotions of the jury, motivating them to use the information, not to logically evaluate the point upon which it is relevant, but to reward or punish one side because of the jurors' emotional reaction. In such a circumstance, the evidence is unduly prejudicial because of the substantial likelihood the jury will use it for an illegitimate purpose." [Citation.]' [Citation.]" (*People v. Scott* (2011) 52 Cal.4th 452, 491; see also *People v. Gionis* (1995) 9 Cal.4th 1196, 1214 ["prejudice" set forth in § 352 does not refer to prejudice or damage to a defense that naturally flows from relevant, highly probative evidence, but applies to evidence that uniquely tends to evoke an emotional bias against the defendant as an individual and has very little effect on the issues].)

We review a trial court's ruling admitting propensity evidence in a sex offense case for abuse of discretion and will reverse only if the ruling was arbitrary, whimsical, or capricious as a matter of law. Moreover, we review the correctness of the court's ruling at the time it was made and not by reference to evidence produced at a later date. (*Robertson*, *supra*, 208 Cal.App.4th at p. 991.)

We conclude the trial court did not abuse its discretion when it admitted five images of child pornography extracted from defendant's computer. E. testified that defendant sexually abused her numerous times and had shown her images of minors engaging in or simulating sexual conduct. The photographs entered into evidence corroborated her account that defendant showed her similar items and may be reasonably interpreted to establish his deviant sexual proclivity for underage girls. In the absence of third-party eyewitnesses and physical proof of molestation, evidence bearing on the credibility of both the victim and perpetrator becomes highly probative. (See *People v. Yovanov* (1999) 69 Cal.App.4th 392, 405 [evidence of uncharged sexual offenses uniquely probative in sex crimes prosecutions].) We have reviewed these images and

15.

find the content, though objectionable, not to be exceedingly inflammatory since defendant's conduct in the present case was "more likely to have aroused the passions of the jurors against him." (*Robertson*, *supra*, 208 Cal.App.4th at p. 993.) The trial court's decision to limit the number of images shown to the jury to five, out of the estimated 2,500, and present each image for three seconds via slide-show format ensured that the jury would not expend an inordinate amount of time "trying the uncharged offense[]" so as to "dwarf[] the trial on the current charge [and] unfairly prejudice the defendant." (*People v. Frazier* (2001) 89 Cal.App.4th 30, 42.) Furthermore, the court's modified CALCRIM No. 1191 offset the risk that the "jury might punish the defendant for his uncharged crime[] regardless of whether it considered him guilty of the charged offense …." (*People v. Frazier*, *supra*, at p. 42.)

Defendant argues that the propensity to have sexual intercourse or sodomy with a child or commit lewd acts upon a child, the crimes for which he was charged and convicted, cannot be inferred conclusively from the different, uncharged crime of possessing child pornography. However, in enacting section 1108, the Legislature determined that the disposition to commit *any* sexual offense is not common to most individuals. (*Falsetta*, *supra*, 21 Cal.4th at p. 912.) "'"Many sex offenders are not 'specialists', and commit a variety of offenses which differ in specific character."'" [Citation.]" (*People v. Soto* (1998) 64 Cal.App.4th 966, 984.) In *Soto* we held:

> "Section 1108 does not require '"more exacting requirements of similarity between the charged offense and the defendant's other offenses …."'" [Citation.] Such a requirement was not added to the statute because '["]doing so would tend to reintroduce the excessive requirements of specific similarity under prior law which [section 1108] is designed to overcome, … and could often prevent the admission and consideration of evidence of other sexual offenses in circumstances where it is rationally probative."'" (*Ibid.*)

Contrary to defendant's position, we find the images of child pornography to be highly probative circumstantial evidence of propensity. (Cf. *People v. Holford* (2012) 203

16.

Cal.App.4th 155, 181, 185-186 [evidence of the defendant's prior molestation of his 15-year-old daughter tended to show his sexual attraction to underage girls and a predisposition to possess child pornography].)

III.    CALCRIM No. 1191 is constitutional.

Finally, defendant contends CALCRIM No. 1191 deprives him of due process because the instruction authorizes the jury to base a conviction of the charged offense, in part, on evidence that he committed an uncharged offense proved only by a preponderance of the evidence rather than beyond a reasonable doubt.[14] We reject this claim in view of *People v. Reliford* (2003) 29 Cal.4th 1007, in which our Supreme Court upheld the constitutionality of the 1999 version of California Jury Instructions Criminal (CALJIC) No. 2.50.01, CALCRIM No. 1191's precursor. (See also *People v. Cromp* (2007) 153 Cal.App.4th 476, 480; *People v. Schnabel* (2007) 150 Cal.App.4th 83, 87 [finding 1999 version of CALJIC No. 2.50.01 and CALCRIM No. 1191 similar in all material respects and rejecting constitutional challenges to CALCRIM No. 1191 on the basis of *Reliford*].) We are required by the doctrine of stare decisis to follow *Reliford*.[15] (*Auto Equity Sales, Inc. v. Superior Court* (1962) 57 Cal.2d 450, 455.)

---

[14]    The Attorney General asserts on appeal that defendant forfeited the issue because defense counsel did not object to the instruction below. We believe defendant's argument is cognizable on appeal, despite his failure to object, because he claims the instruction erroneously states the law and, if he were correct, would affect his substantial rights. (See *People v. Kelly* (2007) 42 Cal.4th 763, 791; accord Pen. Code, § 1259.)

[15]    Defendant relies on *Gibson v. Ortiz* (9th Cir. 2004) 387 F.3d 812 (*Gibson*) for the proposition that CALCRIM No. 1191 is unconstitutional. Decisions of the lower federal courts are not binding on state courts. (*James v. State of California* (2013) 219 Cal.App.4th 1265, 1278, fn. 7.) Moreover, *Gibson* is factually inapposite. In that case, the issue was whether the 1996 version of CALJIC No. 2.50.01 and CALJIC No. 2.50.1, in tandem, deprived an inmate of due process. (*Gibson*, *supra*, at p. 822.) The 1996 version of CALJIC No. 2.50.01 did not contain the caveat subsequently added in the 1999 version, and rephrased in CALCRIM No. 1191, that evidence of a defendant's prior sexual offense proved by a preponderance of the evidence "is not sufficient by itself to prove beyond a reasonable doubt that [he] [she] committed the charged crime[s]" and an

17.

# DISPOSITION

The judgment is affirmed.

_____
DETJEN, J.

WE CONCUR:


_____
LEVY, Acting P.J.


_____
KANE, J.

---

inference properly drawn from this evidence "is simply one item for you to consider, along with all other evidence, in determining whether the defendant has been proved guilty beyond a reasonable doubt of the charged crime." (*Gibson*, *supra*, at pp. 818-819.) CALJIC No. 2.50.1, on the other hand, "ascribed a lesser burden of proof for evidence of previous sexual offenses" and "specifically referenced CALJIC No. 2.50.01 …." (*Gibson*, *supra*, at p. 822.) Although the Ninth Circuit ultimately found these two instructions to be unconstitutional because "the[ir] interplay … allowed the jury to find that [inmate] committed the uncharged sexual offenses by a preponderance of the evidence and thus to infer that he had committed the charged acts based upon facts found not beyond a reasonable doubt, but by a preponderance of the evidence," (italics omitted) it suggested that "[h]ad the jury instructions ended with CALJIC No. 2.50.01, our inquiry would have ended with a denial of [inmate]'s petition [for a writ of habeas corpus]." (*Ibid.*)

We also point out that the Ninth Circuit recently held that the Fourth Appellate District "did not act contrary to federal law in applying the analysis from *Reliford* to uphold the 2002 version of CALJIC No. 2.50.01," which incorporated revisions made in 1999 and 2002 and, "[i]n contrast with the instructions given in *Gibson*, … in no way suggests that a jury could reasonably convict a defendant for charged offenses based merely on a preponderance of the evidence." (*Schultz v. Tilton* (9th. Cir. 2011) 659 F.3d 941, 945.)

18.